**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| **BEAUTY PLUS TRADING CO.,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 15-8502 (ES) (MAH)** |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | |
| **BEE SALES CO.,** | : | |
| | : | |
| **Defendant.** | : | |

**SALAS, DISTRICT JUDGE**

This matter is before the Court upon a motion to vacate default by Defendant Bee Sales Co. ("Defendant" or "Bee Sales").  (D.E. No. 15).  Plaintiff Beauty Plus Trading Co. ("Plaintiff" or "Beauty Plus") opposes the motion.  (D.E. No. 23).  The Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b).  For the reasons below, the Court GRANTS Defendant's motion to vacate default.

1.      **Factual & Procedural Background.**  Plaintiff manufactures and sells a variety of high quality hair products.  (D.E. No. 4, Amended Complaint ("Am. Compl.") ¶ 9).  On March 23, 2015, Plaintiff filed a trademark application for "Havana Mambo."  (D.E. No. 9, Young Hwang Declaration ("Hwang Declaration") ¶¶ 3-4).  On May 12, 2015, Plaintiff released one of its most successful hair extensions under the name "Havana Mambo."  (*Id.* ¶ 12).

In the fall of 2015, Plaintiff became aware that Defendant was selling a line of hair extensions under the name "Super Senegal Mambo" throughout the United States.  (*Id.* ¶ 6).  On October 26, 2015, Plaintiff sent a cease-and-desist letter to Defendant demanding that Defendant stop selling hair extensions under the "Super Senegal Mambo" mark because it was confusingly

1

similar to Plaintiff's "Havana Mambo" mark.  (D.E. No. 9, William W. Stroever Declaration ("Stroever Declaration") ¶¶ 3-4).  Defendant did not respond to Plaintiff's cease and desist letter. (*Id.*)

On December 8, 2015, Plaintiff filed the first Complaint to initiate this action, asserting claims for unfair competition and trademark infringement under federal, state law, and common law.  (D.E. No. 1).  Also on December 8, the United States Patent and Trademark Office issued a Federal Trademark Registration Number for the "Havana Mambo" mark: 4,858,434 (the "'434 Registration").  (Am. Compl. ¶ 10).  On December 11, 2015, Plaintiff filed the Amended Complaint incorporating the new '434 Registration and adding a claim for infringement of a federally registered trademark.  (*Id.*).

On December 14, 2015, Plaintiff served Bee Sales with the Summons and Amended Complaint in Niles, Illinois.  (D.E. No. 5).  But Defendant failed to timely plead or otherwise respond to the Complaint.  And, on February 2, 2016, Plaintiff requested that the Clerk of Court enter default against Defendant.  (D.E. No. 8).  On February 4, 2016, the Clerk of Court entered default.  Thereafter, on April 22, 2016, Plaintiff moved for default judgment against Defendant. (*See* D.E. No. 9).

On June 30, 2016, Defendant's counsel entered an appearance.  (D.E. No. 12).  Defendant then filed a letter with the Court indicating that no answer was filed due to an administrative oversight and that Defendant would move to vacate default.  (D.E. No. 13).  On July 11, 2016, Defendant filed a motion to vacate default pursuant to Federal Rule of Civil Procedure 55(c).  (D.E. No. 15, Defendant's Memorandum of Law in Support of Motion to Vacate Default ("Def. Mov. Br.")).  Thereafter, the Court permitted Plaintiff to serve Defendant with requests for written discovery regarding Defendant's assertions of excusable neglect in the pending motion to vacate.

(D.E. No. 22).  On October 24, 2016, Plaintiff filed its opposition.  (D.E. No. 23, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Vacate ("Pl. Opp. Br.")).  On November 1, 2016, Defendant submitted its reply.  (D.E. No. 24).  On November 7, 2016, the Court granted Plaintiff's request to file a sur-reply (D.E. Nos. 26, 28), and on November 10, 2016, Plaintiff filed its sur-reply.  (D.E. No. 30).

2.	**Defendant's Arguments.**  Citing Rule 55(c), Defendant argues that the Court should vacate default because Defendant's failure to answer the Complaint was inadvertent.  (Def. Mov. Br. at 7).  According to Defendant, its Chief Executive Officer ("CEO"), after receiving the Summons and Amended Complaint, mistakenly believed that the matter was resolved because Defendant discontinued the allegedly infringing hair extension.  (D.E. No. 15, Steve Ahn Declaration ("Ahn Declaration") ¶¶ 2-5).  The Chief Financial Officer ("CFO") eventually realized the error in early June 2016 and then contacted Plaintiff's attorney.  (*See id.* ¶ 4).  Defendant also notes that Plaintiff will not suffer prejudice because no evidence has been lost and because it no longer sells the "Super Senegal Mambo" hair extension.  (Def. Mov. Br. at 8).

Lastly, Defendant avers that it has meritorious defenses.  (*Id.* at 7).  Specifically, it argues that it has a complete defense to the claim of trademark infringement or unfair competition because "mambo" is a generic description of the hair extension and thus not protectable as a trademark.  (*Id.* at 8-9).  In support, Defendant has provided the Court with screen-captures of internet catalogs that appear to demonstrate the prevalent use of "mambo" in the moniker of hair extension products.  (*Id.* at 3-4).  Defendant also claims that "there is no reasonable likelihood that a purchaser would confuse" its discontinued hair extension with the Plaintiff's product.  (*Id.* at 9).

3.	**Plaintiff's Opposition.**  In opposition, Plaintiff argues that Defendant does not have a meritorious defense because Defendant admitted that it purchased and sold the allegedly

3

infringing hair extension in 2015 and that it stopped distributing it in November 2015.  (Pl. Opp. Br. at 7).  Plaintiff also contends that Defendant "fail[ed] to support its general denials with facts or evidence of any kind thereby falling well short of satisfying" the burden to allege specific facts. (*Id.* at 7).

Moreover, Plaintiff also argues that Defendant acted in bad faith by failing to answer Plaintiff's Complaint or respond to the motion for entry of default.  (*Id.* at 8).  According to Plaintiff, Defendant has shown a lack of urgency and promptness when responding to Plaintiff's filings and the Court's orders.  (*Id.* at 13).  Plaintiff also argues that Defendant's CFO made a conscious and knowing decision not to respond to the complaint.  (*Id.* at 11).

Finally, Plaintiff contends that it will be prejudiced for two reasons if default is vacated. First, Plaintiff claims that it will be prejudiced "because of the delay in securing relief."  (*Id.* at 14).  Second, Plaintiff argues that it would be prejudiced if the action proceeds to litigation because Defendant admits that it sold the allegedly infringing product in 2015 and, therefore, "the parties would arrive at the same point in which the case currently stands, in which the only remaining issue in dispute is damages."  (*Id.* at 15).

4.      **Legal Standard.**  Motions to vacate default are governed by Federal Rule of Civil Procedure 55.  *See* Fed. R. Civ. P. 55(c).  Rule 55(c) provides that "[t]he [C]ourt may set aside an entry of default for good cause."  *Id.*  Although the decision to vacate default is largely a matter of judicial discretion, the Third Circuit has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).[1]

When determining whether to vacate default, the Court must consider three factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3)

---

[1]      Unless otherwise indicated, all internal citations and quotations marks are omitted, and all emphasis is added.

whether the default was the result of the defendant's culpable conduct." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir. 1984). Where there is a close case, the Third Circuit has instructed that "doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983).

        5.        **Rule 55(c) Warrants Vacatur.**

        a.        *First*, the Court must consider the "threshold question" of whether Defendant has a meritorious or litigable defense. *$55,518.05 in U.S. Currency*, 728 F.2d at 195. The Court finds that Defendant has a meritorious defense for purposes of the three-part test required for a Rule 55(c) analysis.

Defendant has provided the Court with specific facts to support its argument that Plaintiff's use of "mambo" may be found to be a generic description of a hair extension. (*See* Def. Mov. Br. at 3-4); *see also E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008) (explaining that generic terms are offered no protection under the Lanham Act because "a first-user of a term cannot deprive competing manufacturers of the product of the right to call an article by its name"). Specifically, Defendant has provided exhibits containing screen-captures from online catalogs—including Plaintiff's website—that indicate "mambo" may be used as a generic term. (*See* D.E. No. 15, Exs. D, E, and G). Plaintiff ignores these exhibits, claiming that "Defendant did not provide affidavits or facts in support of its conclusory statements and alleged defenses." (Pl. Opp. Br. at 7). However, "the defaulting party does not have to show that they will prevail at trial; rather, all they must show is that, on its face, their defense is *litigable*." *Glashofer v. N.J. Mfrs. Ins. Co.*, No. 15-3601, 2016 WL 4204549, at *3 (D.N.J. Aug. 9, 2016). After all, if it can prove this defense, the Court sees no reason—nor has Plaintiff offered any—

why Defendant would not be absolved of liability. *See $55,518.05 in U.S. Currency,* 728 F.2d at

195 ("The showing of a meritorious defense is accomplished when allegations of [a] defendant's

answer, if established on trial, would constitute a complete defense to the action."). Accordingly,

this factor weighs in favor of vacating default.

        b.        *Second*, Plaintiff contends that it will be prejudiced because it will be forced

to continue litigating liability and because its relief has been delayed. However, a "[d]elay in

realizing satisfaction on a claim rarely serves to establish the degree of prejudice" sufficient to

warrant the denial of a motion to vacate default. *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653,

656-57 (3d Cir. 1982). Moreover, the Third Circuit has a policy of encouraging decisions on the

merits. *See Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 459-60 (3d Cir. 2011) ("Default

judgments are disfavored in our Circuit . . . . [W]e have previously held that the costs associated

with continued litigation normally cannot constitute prejudice."); *Days Inn Worldwide, Inc., v.*

*B.K.Y.K.-II, Inc.*, No. 16-452, 2016 WL 6126939, at *3 (D.N.J. Oct. 19, 2016) ("Plaintiff has not

identified any special harm that it will suffer if the Court vacates its entry of default judgment.").

Accordingly, since Defendant has demonstrated that Plaintiff will not be sufficiently prejudiced,

this factor weighs in favor of vacating default.

        c.        *Third*, the Court is persuaded that the entry of default against Defendant

stemmed from at least some culpable conduct. "In assessing whether the entry of default was

caused by a defendant's culpable conduct, the courts look at factors such as whether the entry was

caused by defendant or defendant's attorney and whether the defendant responded to the entry with

reasonable promptness." *Perry v. Burns*, No. 11-2840, 2013 WL 1285302, at *7 (D.N.J. Mar. 26,

2013). Here, Defendant's CFO admitted he received the Amended Complaint, admitted it created

an obligation to respond, and admitted that he informed the CEO of the Amended Complaint.

(D.E. No. 23, Steve Ahn Deposition ("Ahn Deposition") at 15:11-17:17).  Notwithstanding receipt of the Amended Complaint, the Defendant's CEO believed that the dispute had been resolved because the allegedly infringing hair extension was discontinued.  (*Id.* at 17:9-11).  Five months later, after receiving Plaintiff's motion for default judgment, the CFO then waited another three weeks to contact Plaintiff's attorney because he "was very busy" and "forgot."  (*Id.* at 19:15-19).  "Where, as here, a defendant repeatedly and completely disregards communications regarding a lawsuit against it and chooses not to defend itself until months after its deadline to file a responsive pleading has passed, its conduct is willful and culpable."  *Re Cmty. Holdings II, Inc. v. Ecullet, Inc.*, No. 16-304, 2016 WL 58688072, at *6 (D.N.J. Oct. 7, 2016).  Thus, this factor weighs against vacating default because Defendant inexcusably failed to respond to Plaintiff's filings and summons.

6.      **Conclusion.**   Notwithstanding its culpable conduct, the Court believes that Defendant has demonstrated the existence of a meritorious defense and the lack of prejudice to Plaintiff.  The Rule 55(c) analysis, therefore, weighs in favor of vacating default.  Accordingly, the Court will vacate the February 4, 2016 entry of default (D.E. No. 8), and this action may proceed on the merits.  An appropriate Order accompanies this Memorandum Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

7